IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The Benedict College, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 3:08-cv-02520-JFA ) |
| National Credit Systems, Inc., | ) ) ) |
| Defendant. | ) ) |

**MOTION TO COMPEL**

COMES NOW Plaintiff, The Benedict College (hereinafter "Benedict" or "Plaintiff") and submits this Motion to Compel pursuant to Rules 33, 34, and 37 of the Federal Rules of Civil Procedure. For the reasons set forth herein, Plaintiff moves that Defendant National Credit Systems, Inc. (hereinafter "NCS" or "Defendant") be compelled to provide amended and supplemental responses to certain of Plaintiff's Interrogatories and Requests for Production of Documents.

**I. CERTIFICATION OF ATTEMPT TO RESOLVE DISPUTE**

The undersigned counsel hereby certifies that Plaintiff has attempted to resolve this discovery dispute by, *inter alia*, submitting in writing Plaintiff's concerns to Defendant's counsel. (Exhibit A - Letter dated June 12, 2009, from Douglas J. Rosinski to William R. Padget; Exhibit B - E-mail dated July 15, 2009, from Douglas J. Rosinski to William R. Padget; Exhibit C - E-mail dated July 23, 2009, from Douglas J. Rosinski to William R. Padget; and Exhibit D – E-mail dated July 24, 2009, from William R. Padget to Douglas J. Rosinski). In

addition, a conference call between Mr. Padget and undersigned counsel was conducted on Wednesday, August 5, 2009, regarding the discovery issues. These efforts were not successful.

## II. BACKGROUND

This is an action by Benedict against NCS, a corporation formed in New York and operating in South Carolina. Benedict alleges that NCS breached a contract with Benedict to provide debt collections services. Benedict paid NCS a total of $255,000.00 based upon an NCS "guarantee" of a minimum of $1,020,000.00 payment upon receipt of amounts on accounts processed by NCS. After several months, Benedict terminated NCS in accordance with the terms of the agreement after NCS miserably failed to perform or pay on its "guarantee." Specifically, Benedict has raised claims for Breach of Contract (Compl. ¶¶ 15-23), Fraud (Compl. ¶¶ 24-33), Fraud in the Inducement (Compl. ¶¶ 34-44), and Unjust Enrichment (Compl. ¶¶ 45-48). NCS denies these allegations and has counterclaimed for Breach of Contract and seeks over $10,000,000.00.

## III. DISCUSSION

Defendant has obstructed Plaintiff's fair discovery in this matter by: (1) failing to respond to legitimate Interrogatories, Document Requests, and Requests for Admission and (2) intentionally obfuscating responses so as to camouflage non-responses and to require Plaintiff to expend undue effort to sift responsive information from Defendant's responses and production. The rules of discovery are to be accorded broad and liberal construction. *Building Graphics, Inc. v. Lennar Corp.*, 2009 WL 2168888 (W.D.N.C.) slip op. at 2 (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The trial court has broad discretion in determination of relevance for discovery purposes. *Stout v. Wolff Shoe Co.*, 2007 WL 10349998 (D.S.C.) (citing *Watson v. Lowcountry Red Cross*, 974 F.2d 482

(4th Cir. 1992)).  A party's failure to produce relevant discovery is not excused because the volume of records to be searched is vast.  *Id*.  Similarly, translating information obtained from a computer database into a reasonably understandable form is a necessary and foreseeable burden.  *Id*.

Here Defendant has used many of the standard ploys in an attempt to deprive Benedict of relevant information that is essential to preparing this case for trial:

(1) The response to Document Request No. 16 for "electronic mail, text messages or any other electronic messages sent or received" by the identified NCS individuals is unresponsive and incredible.  NCS has produced a total of 11 e-mails despite admitting that at one point an NCS contract employee stated that he alone had 126 e-mails between the parties.  *See* Defendant's Response to Plaintiff's First Set of Request for Admission, Admission No. 53 (Exhibit E).  Counsel's explanation that "NCS collectors do not regularly utilize emails to communicate" is irrelevant as the e-mails sought were between the named NCS officials and between the NCS officials and Benedict officials, not among or between NCS "collectors."  Further, it is not credible that the three NCS actors involved in the Benedict matter did not use e-mail to communicate.  These individuals were based in separate parts of the country, and at least one of those individuals repeatedly complained of the burdens of his almost constant travel schedule *in e-mail* to Benedict.

(2) With only a few exceptions, NCS's Responses to Document Requests that identify a document produced by NCS cites to the entirety of the

3

document production, initially pages 1 through 3,545 and subsequently to 1 through 4,954. *See* Defendant's First Supplemental Responses to Plaintiff's First Set of Requests for Production, Request Nos. 1-16 and 21-23 (Exhibit F). Each of these responses is inadequate and unresponsive.

(3) NCS delayed its production in Response to Plaintiff's Second Request for Production for than more than three weeks beyond the 30 days afforded by the rules. Plaintiff agreed to the repeated delays based on NCS counsel's representations that NCS required additional time to gather the requested documents. NCS counsel specifically represented in a phone conversation that NCS personnel were "working on Saturday" to ensure production by the following Monday. When produced, the entire production was three pages, one of which was a cover sheet, in response to Request No. 27. *See* Defendant's Responses to Plaintiff's Second Set of Requests for Production (Exhibit G). NCS objected to, and failed to produce any documents in response to, every other request.

(4) NCS's objections to Request to Produce tax and other financial documents are baseless. Benedict was "guaranteed" over a million dollars as a part of its agreement with NCS. Benedict, after paying NCS a quarter of a million dollars, has every right to determine if NCS had the wherewithal to live up to its agreement or if the agreement was entered into with any means or intention to perform. NCS has admitted making specific representations regarding its experience, scope of operations, and ability to

4

perform to Benedict. *See* Defendant's Response to Plaintiff's First Set of Request for Admission, Admission Nos. 49, 50, 51, and 52 (Exhibit E). NCS cannot now fairly refuse to produce the information supporting – or refuting – those representations which are clearly relevant to this matter. Further, sources of NCS income are relevant to the claimed damages and the timing and extent of NCS's activity to mitigate those damages, if any.

(5)   Similarly, NCS's objections to Request Nos. 17 and 18 for documents listing its clients over the past five years and business related information are without basis. NCS has admitted that it represented itself as an international company, with 30,000 clients, with experience in collecting much larger debt portfolios, and had an average recovery ratio of 42% to 51%. *See* Defendant's Response to Plaintiff's First Set of Request for Admission, Admission Nos. 49, 50, 51, and 52 (Exhibit E). It cannot now reasonably object to requests for information supporting or refuting those assertions of company legitimacy and experience.

(6)   NCS's Answers to Interrogatory Nos. 2, 7, 8, 9, 10, and 14 direct Benedict to the NCS "Answer and Counterclaim." These non-answers violate Fed. R. Civ. P. 33(b)(3) as they provide no answer at all. *See* Defendant's First Supplemental Answers to Plaintiff's First Set of Interrogatories (Exhibit H).

(7)   NCS's Response to Request No. 33 is baldly deficient. NCS objected to production because the requested "records are publicly available and just as easily accessed by Plaintiff as Defendant." This is not a valid objection

and is unresponsive to the legitimate Request. *See* Defendant's Responses to Plaintiff's Third Set of Requests for Production (Exhibit I).

Collectively, these discovery deficiencies illustrate that Defendant has flatly ignored fair requests for specific factual information, including the identification of relevant documents. In most instances, Defendant provides little more than boilerplate verbiage or objections. In others, Defendant asserted that the requested information "is in there somewhere" but failed to provide any guidance as to what the information is or where it is to be found among the nearly 5,000 pages of documents produced. These are all merely excuses for unresponsiveness and poor ones at that.

This Court has dealt with similarly recalcitrant parties before. In *Networking Computing Services Corp. v. Cisco Systems, Inc.*, the Court sanctioned a party for "failure to produce requested electronic mail messages and other documents" including a customer list. 223 F.R.D. 392, 394 (D.S.C. 2004).

> It is unconvincing and inconceivable, given current technology, that a company in the business of computer software failed to keep a list of its customers or could not readily assemble such a list when requested.

*Id.* at 400. It is equally unconvincing and inconceivable that three years later Defendant in this case claims it does not use e-mail. Further, Defendant admittedly performs and maintains all business functions electronically but can only produce a shuffled, unlabelled, and unexplained set of hardcopy documents.

This Court has also seen Defendant's stonewalling before.

> I have presided over one discovery dispute where the defendant's attorney objected to an interrogatory, which essentially sought the names of witnesses, on the grounds that it was burdensome and oppressive, while at the same time propounding an identically-worded question in his own interrogatories.

6

*Id.* at 395 n.6.  Defendant's "references" to "its Answer and Counterclaim" and the totality of Bates numbered documents instead of providing specific, substantive responses are similarly disingenuous.

Defendant's obtuse responses and lack of factual detail deprive Benedict of key trial evidence.  Benedict, therefore, respectfully requests that this Court compel Defendant to conduct a good faith search for responsive information and submit detailed responses to each of the above Interrogatories, Requests for Production, and Requests for Admission.

### IV.  CONCLUSION

Defendant's responses set forth above are inadequate and fall well short of meeting Defendant's obligations under Rules 33, 34, and 37 of the Federal Rules of Civil Procedure.  Benedict respectfully requests that the Court:  (1) compel Defendant to provide complete responses to Benedict's Interrogatories, Requests for Production, and Requests for Admission as set forth herein; (2) award attorneys' fees and costs associated with prosecuting this motion; and (3) order such other and further relief as it may deem appropriate.

DATED this the 7th day of August 2009.

          Respectfully submitted,

          OGLETREE, DEAKINS, NASH,
            SMOAK & STEWART, P.C.

          s/Douglas J. Rosinski
          Charles T. Speth II (Fed. ID No. 4258)
          Douglas J. Rosinski (Fed. ID No. 6995)
          1320 Main Street, Suite 600
          Columbia, SC  29201
          803.252.1300 Telephone
          803.254.6517 Facsimile
          ted.speth@ogletreedeakins.com
          douglas.rosinski@ogletreedeakins.com

          ***Attorneys for Plaintiff The Benedict College***