**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
(COLUMBIA DIVISION)**

| | |
|---|---|
| The Benedict College, ) | Case No.: 3:08-cv-02520-JFA |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| National Credit Systems, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | _____ |

**DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL**
_____

### I.     Introduction

Defendant National Credit Systems, Inc. ("NCS") submits this response to Plaintiff Benedict Colleges ("Benedict") Motion to Compel filed August 7, 2009. For the reasons set forth herein NCS requests this Court deny Benedict's Motion.

### II.     Allegations of Benedict's Complaint [1]

Benedict alleges that it entered into an agreement with NCS for NCS to collect outstanding tuition bills due to Benedict in July of 2007. The Agreement, as alleged by Benedict, is attached hereto as Exhibit 1. Complaint ¶¶ 1-4. Benedict alleges that the Agreement required Benedict to pay the sum of $255,000.00 in exchange for NCS's collection efforts and further that NCS would guarantee up to $1,020,000.00 in collections within 120 days, which represents four times the contract price. Complaint ¶¶ 6-7. The Agreement provided that Benedict would submit 5000

---

[1] NCS has denied many of the allegations of Benedict's Complaint, but even taken the allegations as true for the purpose of the motion to compel, Benedict's requests exceed the scope of permissible discovery as discussed herein.

accounts for collection, but Benedict alleges that to the extent less accounts were submitted, that the guaranteed amount would be prorated. Complaint ¶¶ 8-9. Benedict alleges NCS did not meet the terms of the guarantee and refused to return the guaranteed amount. Benedict has brought a claim for breach of contract seeking damages of $642,651.42 (the alleged prorated amount on the guarantee). Further, Benedict has brought claims for fraud, fraud in the inducement, and unjust enrichment, each seeking damages of $642,651.42. Notably, despite the requirement of Rule 9 of the Federal Rules of Civil Procedure ("FRCP") that such matters be plead with particularity, the only fraudulent representation alleged to have been made by NCS is:

> That the Defendant NCS made a representation to the Plaintiff Benedict that NCS guaranteed payment of 400% (Guaranteed Amount) of the full system price ($255,000) paid by Plaintiff Benedict within one hundred (120) days from the time NCS received the last of all qualifying claim forms covered by the service agreement.

Complaint ¶ 25. NCS has denied these allegations, particularly that the Agreement includes an Addendum dated July 12, 2007, as NCS has no knowledge of the Addendum until being served with this suit.[2] Importantly, Benedict has not alleged or made any claim for punitive damages in this suit. See generally Complaint.

---

[2] While outside the scope of Benedict's Complaint, NCS would note that the Addendum, which Benedict claims is part of the Agreement, was not agreed to by any responsible party at NCS, but rather was signed by a Sales Trainee, Darren Ford, a convicted felon, with many personal ties to Benedict College. NCS believes Benedict and Ford attempted to unilaterally alter the terms of the Agreement dated May 18, 2007 to remove all qualifications of the NCS Guarantee. Under the terms of the purported Addendum (Section 7(e), NCS allegedly guaranteed approximately $650,000.00 in return so long as Benedict submitted accounts where debtor was not dead or bankrupt. Notably, there is no limitation imposed regarding, number of accounts, amount of debt, age of debt, date of last payment, required debtor information, etc. under Benedict's alleged version of the Agreement, which are all standard limitations of the guarantee on NCS's standard agreement (i.e. the first 2 pages of the Agreement). Needless to say NCS's Sales Trainee, was expressly prohibited from altering the terms of the standard form agreement and Benedict NCS believes Benedict was keenly aware of his limited role in the contract process.

### III.     The Instant Motion to Compel

Despite this limited allegation of fraud and Benedict's contract claims, Benedict seeks by way of discovery, *inter alia*:

> -All tax returns, filings, or other documents, that NCS filed, or was required to file, with the United States Internal Revenue Service or any state county, or municipal tax authority in the past five years. (Exhibit G- Request 25).
>
> -All financial statements, reports, and similar documents prepared for or provided to any owner, shareholder, or equity debt holder of NCS in the last five (5) years. (Exhibit G- Request 26)
>
> -Statements of all bank accounts, money management accounts, and any other accounts in which NCS has deposited or withdrawn funds in the last five (5) years. (Exhibit G- Request 28)
>
> -All listings of real or personal assets NCS filed with, or was required to file by, any government or private entity in the last five years. (Exhibit G- Request 29).

NCS objected to these requests as overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Simply, put none of these requests relate to any claim or defense asserted in this case. Further, none of the requested information relates to any alleged misrepresentations plead by Benedict, nor to any issues raised by the contract claim.

Additionally, Benedict seeks emails that no longer exist as they were deleted prior to the initiation of this litigation. Benedict seeks to place its burden of reviewing and identifying documents produced by NCS in the usual course of business on NCS in contravention to the requirements of Rule 34 of the FRCP. Although not alleged in the Complaint (in violation Rule 9), Benedict now seeks to discover NCS's client list suggesting NCS misrepresented its business experience. NCS will address each of Benedict's contentions in turn.

**IV.     Benedict contentions are generally without merit.**

While it is difficult to discern from the Motion, Benedict appears to set forth the materials subject to its motion to compel beginning on page 3 of its Motion. NCS will address the specifics as to each of these contentions in turn.

    A.     Contention 1 (Emails)

Benedict seeks the production of emails that no longer exist. NCS has produced all documents in its possession responsive to this requests as part of its production Bates Number NCS 3549-3578. The three NCS actors referenced are Darren Ford, Eric Snyder and Christopher Rehkow. Ford, Snyder, and Rehkow have been deposed and have confirmed under oath that all emails that remain in there respective possession have been produced. NCS simply cannot produce what no longer exists.[3]

    B.     Contention 2 (No Labeling of Document Production)

Benedict claims that NCS's production of almost 5000 pages of documentation is inadequate and unresponsive because the Responses to each of Benedict's nonobjectionable requests reference the Bates numbering for the entire production. This contention is without merit. As NCS's responses indicate, the documents sought were gathered and produced as they are kept in the usual course of business. Rule 34 of the FRCP expressly requires that documents be produced or made available for inspection as they are kept in the usual course of business. Rule 34(b)(2)(E)(i) only requires the documents be produced "as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request." Rule 34 FRCP (emphasis

---

[3] Interestingly, many of the emails sought are thought to be sent to Benedict employees, yet Benedict has also been unable to produce these emails.

added).  *See e.g. Doe v. District of Columbia*, 231 F.R.D. 27, 35, 36 (D.D.C. 2005)(rejecting plaintiffs argument that defendant must label any documents provided with the categories set forth in their requests and finding "as long as plaintiff produced the documents as they are kept in the usual course of business, he was in compliance with the discovery rules").  Benedict's attempt to ignore the "or" provision of the Rule and force NCS categorize and label its production is without merit.

In fact, NCS went several steps further than required by the rule.  NCS gathered the information in the usual course, copied the information, Bates numbered all documents produced, and provided them in electronic pdf format to Benedict.  NCS subsequently provided counsel for Benedict with a listing by Bates Number and general description of its document production.  See Exhibit 2 attached hereto (August 7, 2009 Email from B. Padget to D. Rosinski).  Nonetheless, Benedict now seeks to force NCS to further categorize and label its documents  in violation of the requirements of Rule 34.

Benedict's contention would require counsel to generate a matrix indicating that pages X are responsive to Request 1, pages Y are responsive to request 2 and so on.  Given that many of Benedicts requests for production are extremely broad [4] and many of the requests would overlap, the

---

[4] For example several of Benedict's Requests were as follows:

Request 1- All documents, explicitly including electronic mail communications, in the possession of NCS or its attorney that relate to or discuss the business relationship between NCS and Benedict, any facts related to this litigation or that form the basis of any claim in this litigation.

Request 2– All documents upon which the allegations and denials in Defendant's Answer and Counterclaim are based.

Request 3-- All documents that relate to corroborate, or support NCS's counterclaim that Benedict breached the Collection Agreement as alleged in Paragraphs 42 and 45 of

requirement of creating such a matrix is overly burdensome and simply not required by Rule 34. As evidenced by the listing of documents provided to Benedict's counsel, these documents were not "shuffled" or "unexplained" as suggested by Benedict. In sum, NCS's production satisfied the requirements of Rule 34. As better explained by the Court in *Dynamic Corp. v. Shan Enterprises, LLC*, 927 A.2d 10, 31 (Md. App. 2007):

> Once a party, in response to an RPD, has properly produced documents for inspection by furnishing them to the other party as they were kept in the usual course of business, the producing party is not required to further analyze, categorize, or attach meaning to the documents. Those tasks become one of the many that the requesting party must undertake as it conducts further discovery (for example depositions of people with knowledge of the information in the documents), and as it engages in trial preparation.

Benedict's attempt to shift it's burden of analyzing and categorizing NCS's document production to NCS is baseless.

### C. Contention 3

The substantive discovery sought by Plaintiff's Second Set of Requests for Production is addressed as part of Contention 4 and will be addressed in that section. The implications and suggestions that counsel was not fairly participating in the discovery process will be addressed in this section. Counsel and NCS worked diligently to prepare supplemental responses to Benedict's First

---

Defendant's Answer and Counterclaim.

Request 13– All documents that relate or refer in any way to Benedict wh have been downloaded by any employee or agent for NCS or at the request of NCS to a portable backup device or any other electronic device or system.

Request 23– All documents and other evidence created or stored in electronic form relating to Benedict which have not been produced in response to one or more of the above Requests.

See Exhibit F to Benedict Motion.

Set of Interrogatories and Requests for production and provided those supplemental responses after working the weekend to gather the additional approximately 1500 pages of documents produced on July 23, 2009 to Benedict. See Exhibit H. Benedict characterization that this conversation involved only the responses to the Second Set of Requests for Production is without merit. Benedict's generalizations that counsel worked the weekend to produce one document are disingenuous and misleading.

### D.    Contention 4 (Access to Unlimited Financial Information)

Benedict has requested tax returns, banks statements, financial statements, etc. over the past five years under the guise that it is entitled to learn if NCS had the wherewithal to perform on the contract.[5] Importantly, Benedict has not alleged that NCS did not have the wherewithal to perform on the Agreement. Again, the only allegation even remotely resembling fraudulent conduct is:

> That the Defendant NCS made a representation to the Plaintiff Benedict that NCS guaranteed payment of 400% (Guaranteed Amount) of the full system price ($255,000) paid by Plaintiff Benedict within one hundred (120) days from the time

---

[5] For example, Benedict has requested the following:

-All tax returns, filings, or other documents, that NCS filed, or was required to file, with the United States Internal Revenue Service or any state county, or municipal tax authority in the past five years. (Exhibit G- Request 25).

-All financial statements, reports, and similar documents prepared for or provided to any owner, shareholder, or equity debt holder of NCS in the last five (5) years. (Exhibit G- Request 26)

-Statements of all bank accounts, money management accounts, and any other accounts in which NCS has deposited or withdrawn funds in the last five (5) years. (Exhibit G- Request 28)

-All listings of real or personal assets NCS filed with, or was required to file by, any government or private entity in the last five years. (Exhibit G- Request 29).

NCS received the last of all qualifying claim forms covered by the service agreement. Complaint ¶ 25. Simply put, Benedict has only alleged that NCS failed to perform on the Agreement. Benedict has not alleged that NCS misrepresented its means, the quality of services performed, its experience with other clients, its experience on comparable accounts, etc. Because Benedict has not alleged such frauds, it can not now seek to discover evidence responsive to a fraud not plead.[6] *See Pub. Employees Ret. Ass'n of Colo . v. Deloitte & Touche, LLP,* 551 F.3d 305, 311 (4th Cir. 2009)(Rule 9 "discourages fishing expeditions brought in the dim hope of discovering a fraud").

The true reason for Benedict's inquiry lies in its counsel's statement, "now that we are in litigation, Benedict has every right to know whether NCS can satisfy a judgment should Benedict prevail." See Exhibit C to Motion (Rosinski Email to Padget dated July 23, 2009). However, such materials are not discoverable at this stage in litigation. "The discovery of facts concerning a party's financial status or ability to satisfy a judgment is not permitted under the rules, since such matters are not relevant and cannot lead to the discovery of admissible evidence. Thus, discovery normally will not extend to the names of defendant's accounts, tax returns, taxable income, or the defendant's assets and liabilities." Federal Procedure § 23.133 (Lawyers Ed. 2008)(referencing *Ranney-Brown Distributors, Inc. v. E.T. Barwick Industries, Inc.*, 75 F.R.D. 3 (S.D. Ohio 1977); *Oriental Commercial & Shipping Company, Ltd. v. Rosseel, N.V.*, 125 F.R.D. 398 (S.D.N.Y. 1989); *Chenoweth v. Schaaf*, 98 F.R.D. 587 (W.D. P.A. 1983)). Thus, Benedict's attempt to conjure up an unplead theory of fraud (in contravention to Rule 9) after 16 months of litigation to discover such

---

[6] *See generally Neuman v. Levan*, 2009 WL 1856569 (D.S.C. June 26, 2009) (attached hereto as Exhibit 3)(stating the numerous purposes of Rule 9).

financial information is unavailing, and its request should be denied.

      E.      Contention 5 (NCS's Customer List)

Benedict similarly seeks a list of all clients or customers for the past five years. Again, this request is not relevant to any of Benedict's allegations that NCS failed to honor its guarantee. Further, it is in no way relevant to the singular allegation of fraud made by Benedict that NCS did not honor the terms of the guarantee. Such a request is overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence at it bears on no claim or defense at issue in this case. The Rules "may not be used for mere fishing excursions into the affairs of an adversary." *Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corporation*, 4 F.R.D. 328, 329 (W.D. Penn. 1940). In *Fort Wayne Corrugated Paper* the Court upheld objections to document requests in a breach of contract action because the requests bor no relevance to the issues presented in the case. A review of the pleadings at issue in this case similarly reveals that Benedict's requests for NCS's client list is not relevant to this case.[7] This is nothing more than a fishing excursion into the affairs of NCS and should be denied.[8]

      F.      Contention 6 (Supplemental Answers to Interrogatories Re: Affirmative Defenses)

Benedict seeks responses to its interrogatories number 2, 7, 8, 9, 10, and 14, claiming that NCS simply referenced it Answer and Counterclaim. Initially, NCS would note its response to Interrogatory Number 2:

---

[7] Again, to the extend Benedict seeks to bootstrap in discovery on fraud claims not alleged with particularity, its efforts should be unavailing.

[8] Should the Court determine these materials are discovery NCS would request reasonable confidentiality order to protect its sensitive business information.

> 2. Identity each and every document and tangible object under control or in the possession of NCS or its attorneys on which NCS intends to rely in support of its defenses and counterclaims, including, but not limited to, witness statements, photographs, plats, sketches, personal notes, notebooks, diaries, e-mails, forms, invoices, or receipts.
>
> ANSWER: Defendant [NCS] would refer Plaintiff [to] Defendant's Responses to Plaintiff's Requests for Production. Defendant specifically reserves the right to supplement its answer if additional information becomes available.

NCS believes this response complies with the requirements of the Rules of Civil Procedure.

As for responses to interrogatories number 7, 8, 9, 10, and 14, Benedict has propounded contention interrogatories requesting NCS to set forth the factual basis for several of its affirmative defenses including: accord and satisfaction, Benedict's failure to meet mutual obligations, Benedict's failure to mitigate its damages, and waiver, estoppel and laches. At the time these initial responses were provided by NCS discovery had just begun. NCS has indicated it is willing to provide supplemental answers to these interrogatories as more substantial discovery is completed.

        G.     Contention 7 (Documents of Public Record)

Benedict further contends that NCS's response to Request Number 33 is "baldly deficient." NCS responded to Request 33 as follows:

> 33. All filings made and documents submitted to the New York Secretary of State for the past five years.
>
> RESPONSE: Defendant objects to this request because the requested records are publicly available and just as easily accessed by Plaintiff as Defendant. Subject to this objection, all documents in the possession of NCS at this time have been produced to Plaintiff Bates Numbered NCS 3546-NCS 3548.

Benedict claims "this is not a valid objection." Benedict is mistaken. "It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *Securities and Exchange Comm'n v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995

(S.D.N.Y 1973); *Baum v. Village of Chittenango*, 218 F.R.D. 36, 40 (N.D.N.Y. 2003) (denying motion to compel production of transcript because it was public document and "equally accessible to all."). NCS has previously provided all filings which are currently in its possession. See Exhibit 4 attached hereto (Articles of Incorporation of NCS- NCS Bates Number 3546-3548) and Exhibit I to Benedict's Motion. If Benedict wants all NCS filings with the New York Secretary of State, it can request those items at its time and expense. Again, Benedict's attempt to shift its burden in investigating its case to NCS is without merit.

Benedict's blind reliance on this Court's Order in *Networking Computing Services Corp. v. Cisco Systems, Inc.*, 223 F.R.D. 392 (D.S.C. 2004) is misplaced. The discovery issues raised in this matter are not comparable to the discovery abuses and inconsistencies noted in *Networking Computing Services Corp*. case. Defendant NCS (in this case) has raised legitimate objections to overbroad discovery requests in relation to claims asserted by Benedict. Benedict's attempts to delve into the affairs of NCS by way of its attempted fishing excursion are improper. Benedict's attempt shift its burden to analyze NCS's document production and produce documents just as easily accessed by Benedict is without merit. Importantly, Benedict has not referenced a single authority indicating the information sought is discoverable.

**V.     Conclusion**

For the foregoing reasons, Benedict's Motion to Compel should be denied.

                                  **FINKEL LAW FIRM LLC**
                                  1201 Main Street, Suite 1800
                                  P.O. Box 1799
                                  Columbia, South Carolina 29202
                                  (803) 765-2935
                                  (803) 252-0786 fax

                                    /s/ William R. Padget
                                  Charles A. Krawczyk (Dist. Court ID: 9198)
                                  *ckrawczyk@finkellaw.com*
                                  William R. Padget (Dist. Court ID: 9466)
                                  *bpadget@finkellaw.com*

August 25, 2009